**Emily PATE, Plaintiff-Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services, Defendant-Appellee.**

No. 85–4199
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Dec. 5, 1985.

Opinion on Denial of Rehearing
Jan. 6, 1986.

---

Southwest Louisiana Legal Services, Bobbie Ross, Lake Charles, La., for plaintiff-appellant.

Thomas Stanton, Asst. Regional Atty., Dept. of Health and Human Services, Dallas, Tex., for defendant-appellee.

Before GEE, REAVLEY and ROBERT MADDEN HILL, Circuit Judges.

ROBERT MADDEN HILL, Circuit Judge.

Plaintiff-Appellant Emily Pate appeals the district court's grant of a summary judgment affirming the Secretary of Health and Human Services' (Secretary) determination that Pate was not entitled to disability insurance benefits. We affirm.

### I.

After twice being denied disability insurance benefits, Pate filed the instant application for benefits on May 12, 1982. She alleged disability as a result of a manic depressive illness with an onset date of March 31, 1980.

On January 17, 1979, at the age of twenty-three, Pate was hospitalized for emotional problems after she was found crying in a shopping center parking lot. Her treating psychiatrist, Dr. Keith Nabours, diagnosed an acute schizophrenic episode and prescribed a chemical regimen for Pate to follow. The psychiatrist noted that Pate's prognosis was "good" and that she "has a good premorbid personality and is most likely to show good improvement after a

period of time on medication." After her discharge from the hospital on February 23, 1979, Pate returned to work. On April 2, 1979, in response to a query from a consulting psychiatrist with Disability Determinations, Dr. Nabours reported that Pate then had "no overt psychotic thinking" but that her "affect is inappropriate," "she still has difficulty relating to others," and "her readjustment is still not complete." Pate continued working through at least March 1980.

On August 3, 1981, Pate was readmitted to the hospital because of an exacerbation of her manic depressive illness. Dr. Nabours determined that Pate recently "has been manifested with manic and depressive episodes enwrapped in alternating sequences. She has been on Lithium and doing quite well for the past year, but in the last few weeks has been having mood swings." After placing Pate on three types of medication, Dr. Nabours reported that Pate "showed rapid stabilization of her mood. This was particularly noticeable after starting the Navone so at the time of discharge her mood was rather stable and that she felt that she was able to cope again." At the time of her discharge from the hospital on August 15, 1981, Pate's prognosis was "rather guarded."

In a progress report dated October 29, 1981, Dr. Nabours noted that by taking the prescribed medications Pate

has shown a gradual but progressive improvement in condition. At this time she is not having any affective changes apparent nor is there any evidence of psychotic process. She still is having to deal with the divorce situation which exacerbates her illness periodically and any type of stress seems to send her either into manic or depressed state at this time even with medication.

During a subsequent progress report dated June 4, 1982, Dr. Nabours reported that: "Currently she is functioning quite well. Her mood tone is stable and at this time it is perfectly conceivable that she would be able to work." He further noted: "She is prone to have episodes of depression and mania as is usual with many depressive illnesses, but functions quite well in between the episodes. As of her latest visit which was on May 21, 1982, she was functioning exceptionally well." On July 23, 1982, Dr. Nabours wrote to Disability Determinations that he saw Pate on June 15,

1982, and that: "At that time she was functioning quite well. Her condition was essentially that she was functioning at a normal level."

On November 2, 1982, in response to a query as to Pate's mental status between November 1981 to present, Dr. Nabours reported:

Patient continued to have problems with Manic Depressive Illness and problems in coping with her marriage break-up. However during this period of time she had many more periods of being able to function well and responded well to treatment efforts at restricting her lapse into the psychotic illness. At the present time she is functioning quite well and has been for several months and is capable of working at this time. This patient is likely to experience exacerbations of her Manic Depressive Illness in the future.

During the summer of 1982, Pate elected to discontinue all her medications in an attempt to get her previous employer to hire her back. While off the medication, in September 1982, Pate made a suicidal gesture by slashing her wrists following family problems. In a report dealing with this incident, dated November 15, 1982, Dr. Nabours reported that Pate "has been doing well, totally off all medications," and "At this point, I see no evidence that she cannot return to work."

On June 14, 1983, Pate was again admitted to the hospital for psychiatric problems. The psychiatrist who treated Pate during this hospital stay, Dr. G. Morin, diagnosed "schizophrenic reaction, chronic undifferentiated type." Pate was released from the hospital on August 2, 1983. On August 15, 1983, Dr. Morin completed a Mental Status Functional Capacity form concerning Pate. He noted that her ability to understand simple instructions was good, her ability to carry out instructions under ordinary supervision was fair, her ability to sustain work performance and attendance was fair, and her ability to cope with pressures of ordinary work was poor.

Pate submitted the application at issue in this appeal on May 12, 1982. The application was denied by the Social Security Administration both initially and on reconsideration. On November 2, 1982, an Administrative Law Judge (ALJ) conducted a de novo hearing on Pate's claim. While Pate was hospitalized again after the hearing, the ALJ's review included the evidence concerning Pate's June 1983 admission to the hospital. On August 31, 1983, the ALJ issued an initial decision finding Pate not disabled and denying her claim for social security benefits. The Social Security Administration Appeals Council denied Pate's request for review, making the ALJ's decision the final decision of the Secretary. Pate thereafter sought review of the Secretary's decision in the United States District Court. The district court ordered judgment in favor of the Secretary. This appeal followed.

## II.

Pate raises three issues on her appeal: (1) the administrative law judge erred in applying the medical vocational guidelines to Pate's claim, (2) the district court erred in refusing to remand the case to the Secretary for consideration of new evidence, and (3) attorney's fees pursuant to the Equal Access to Justice Act should be awarded.

## A.

Pate contends that the ALJ erred by relying exclusively on the medical vocational guidelines contained in 20 C.F.R. part 404, subpart P, app. 2, sections 200.00–204.-00 in denying her claim. Pate argues that use of the guidelines is improper in a case involving solely non-exertional impairments. The Secretary concedes the correctness of the latter argument but contends that the ALJ did not rely on the guidelines.

The Secretary employs a five-step procedure in evaluating claims of disability. *Martin v. Heckler,* 748 F.2d 1027, 1031 (5th Cir.1984). The guidelines may be applied after the ALJ first makes the following determinations for the first four steps: (1) the claimant is not working, (2) the claimant has a severe impairment, (3) the claimant's impairment does not meet an impairment listed in Appendix 1 of the Regulations, and (4) the impairment prevents the claimant from doing past relevant work. The Secretary may use the guidelines to answer the fifth determination, i.e. whether the impairment prevents the claimant from engaging in other gainful employment. *Rivers v. Schweiker,* 684 F.2d 1144, 1155 (5th Cir.1982). The guidelines allow the Secretary to take administrative notice of the existence of jobs in the national economy when a claimant's residual func-

tional capacity, age, education, and previous work experience meet certain specified criteria. *Heckler v. Campbell,* 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983); *Jones v. Heckler,* 702 F.2d 616, 622 (5th Cir.1983). Thus, the Secretary is relieved, in certain cases, of the burden of calling a vocational expert to testify about the claimant's ability to perform other substantial gainful activity. *Salinas v. Schweiker,* 662 F.2d 345, 348 (5th Cir.1981).

■ As Pate points out, and the Secretary concedes, the Secretary may not apply the guidelines in a case involving solely non-exertional impairments, *Martin v. Heckler,* 748 F.2d 1027, 1034–35 (5th Cir. 1984); however, this correct statement of law does not mandate reversal of the Secretary's decision because of other findings made by the ALJ. In determining that Pate was not disabled, the ALJ gave three reasons for his determination. He found that: (1) Pate had not been and could not be expected to be disabled for a continuous period of twelve months, (2) Pate could perform some of her past relevant work, and (3) Pate could perform other light work, numerous examples of which the Secretary has taken administrative notice of in the guidelines. Had the ALJ reached step five of the five-step disability determination process, and had the ALJ made only the third finding, we would be required to reverse. *Id.* However, the first determination made by the ALJ, i.e., that Pate's disability had not lasted for and could not be expected to last for twelve continuous months, is supported by substantial evidence and forecloses any argument that she is disabled.

In order to meet the statutory definition of disability, the claimant must show that the disability has lasted for a continuous period of twelve months or can be expected to last for a continuous period of twelve months. "The term 'disability' means—(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." 42 U.S.C. § 423(d)(1); *see also* 20 C.F.R. § 404.1509 (1985) ("Unless your impairment is expected to result in death, it must have lasted or must be expected to last for a continuous period of at least 12 months. We call this the dura-

tion requirement.") The twelve month duration requirement is a threshold requirement for the claimant to prove a disability under the Social Security Act. *See Alexander v. Richardson,* 451 F.2d 1185 (10th Cir.), *cert. denied,* 407 U.S. 911, 92 S.Ct. 2437, 32 L.Ed.2d 685 (1972); *Williams v. Finch,* 440 F.2d 613, 615 (5th Cir.1971). Since the ALJ made the determination that Pate's disability had not lasted for and could not be expected to last for twelve months, the ALJ's holding that Pate is not disabled should be upheld if it is supported by substantial evidence.

While neither Pate's nor the Secretary's brief discusses the ALJ's finding that Pate's disability did not meet the duration requirement, it is clear that the ALJ made this finding. The ALJ's opinion mentions at least four times that Pate's disability does not meet the duration requirement. For example, the ALJ's opinion states:

Additionally, while there has been detailed study and thorough consideration of the hospital records on the psychotic episode for which the claimant was admitted to treatment "June 14, 1983," it has been concluded that it supports rather than detracts from the above discussed findings and opinions of the long-time treating psychiatrist and does not support a conclusion that the disability therefrom will continue for a continuous period of 12 months.

Accordingly, it is concluded that the record as a whole does not support the presence of "disability," as defined by Title II of the Act, and the implementing Social Security Administration Regulations No. 4, which through the date of this decision has or can be expected to last for a continuous period of 12 months.

\* \* \* \* \* \*

It thus becomes apparent that the evidence received upon the application filed "May 22, 1983" does not support the claimant's allegation of disability beginning "March 31, 1980," and likewise does not demonstrate that any time subsequent thereto she has been disabled for a continuous period of twelve months, by either physical or mental impairments or a combination thereof, that meets or equals the severity contemplated by the Listing of Impairments announced under Appendix 1, supra.

\* \* \* \* \* \*

The evidence is not persuasive, both from the standpoint of the claimant's prior treatment and response and the opinions of her long-time treating psychiatrist (describing the proneness for such episodes in such depressive illnesses) the claimant's last episode of psychiatric illness will result in disability for a continuous period of 12 months.

On appeal, the question is whether the ALJ's determination is supported by substantial evidence. 42 U.S.C. § 405(g); *Scott v. Heckler*, 770 F.2d 482, 484 (5th Cir.1985). Substantial evidence is more than a scintilla, but less than a preponderance, and is such relevant evidence as a reasonable mind might accept to support the decision. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ Pate does not argue that the ALJ's determination that she had not been and could not be expected to be disabled for a continuous period of twelve months was not supported by substantial evidence; nevertheless, we have carefully reviewed the record, and we find, based on the medical evidence outlined in Part I of our opinion, that the ALJ's determination was supported by substantial evidence. The ALJ's finding that Pate was not disabled cannot be disturbed on appeal. 42 U.S.C. § 405(g). Thus, Pate's first issue on appeal is irrelevant and does not warrant reversal.

### B.

■ Pate next argues that the district court erred in not remanding the case to the Secretary for the consideration of new evidence. The new evidence submitted by Pate consisted of three items: (1) a release showing that Pate's disability insurer had paid her $10,000 in a settlement, (2) a memo indicating that Pate had seen Dr. Nabours eleven times between mid–1982 and mid–1983, and (3) a psychological report and IQ evaluation. The district court may remand a case to the Secretary when the evidence is new and material, and where good cause is shown for the failure to present the evidence to the Secretary. 42 U.S.C. § 405(g); *Dorsey v. Heckler*, 702 F.2d 597, 604 (5th Cir.1983). Since the evidence Pate seeks to submit to the Secretary was not available until after the ALJ's decision, there is no question that the evidence is new and that there is good cause

for failure to present the evidence to the Secretary. The only question is whether the evidence is material.

For the evidence to be considered material, there must be "a reasonable possibility that the new evidence would have changed the outcome of the Secretary's determination had it been before" the Secretary. *Id.* at 604–05; *Chaney v. Schweiker*, 659 F.2d 676, 679 (5th Cir.1981). The new evidence in the instant case is not sufficiently material to merit remand. The settlement with Pate's disability insurance carrier would not likely have affected the Secretary's decision because disability determinations by other entities are not binding on the Secretary, who must make an independent determination based on applicable laws and regulations. 20 C.F.R. § 404.1504 (1985); *Skeels v. Richardson*, 453 F.2d 882, 883 (5th Cir.), *cert. denied*, 409 U.S. 857, 93 S.Ct. 137, 34 L.Ed.2d 101 (1972). Furthermore, the settlement was not an actual finding of disability. The memo from Dr. Nabours' office shows only that Pate has continued to receive treatment, a fact that is consistent with the ALJ's reasoning that Pate cannot stand stress and may still have relapses but is able to function well most of the time. Finally, the psychological report does little more than to confirm Dr. Nabours' analysis. Although it notes schizoid and withdrawal tendencies, it states that Pate was not "currently overtly psychotic." The report does not purport to evaluate Pate's ability to function in a work setting. Additionally, the psychological report discusses Pate's condition as it stood after the time period that the Secretary was considering. Evidence of the deterioration of a condition that occurred after the Secretary's decision is not a basis for a remand. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir.1985). Thus, the district court did not err by failing to remand the case.

### C.

The final issue is whether Pate is entitled to attorney's fees under the Equal Access to Justice Act. 28 U.S.C. § 2412(d). Pate would be entitled to attorney's fees if she were the prevailing party and if the Secretary's position was not reasonable in both fact and law. *Martin v. Heckler*, 754 F.2d 1262 (5th Cir.1985). Since Pate was not the prevailing party, attorney's fees pursuant to the Equal Access to Justice Act are denied.

The judgment of the district court is AFFIRMED.

*ON PETITION FOR REHEARING*

PER CURIAM:

IT IS ORDERED that the petition for rehearing filed in the above entitled and numbered cause be and the same is DENIED. Nothing in this Order prevents appellant from filing a new claim or attempting to reopen her previous claim for consideration under the new mental health regulations issued by the Secretary of Health and Human Service, 50 Fed.Reg. 35065 et seq. (1985) (to be codified at 20 C.F.R. 404, subpart P, app. 1).