IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 95-60257
Summary Calendar

---

BERNA C. PRINCE,

Plaintiff-Appellant,

versus

SHIRLEY S. CHATER, COMMISSIONER
OF SOCIAL SECURITY,

Defendant-Appellee.

---

Appeal from the United States District Court for the
Southern District of Mississippi
(4:94-CV-69)

---

January 16, 1996

Before GARWOOD, WIENER and PARKER, Circuit Judges.[*]

GARWOOD, Circuit Judge:

Plaintiff-appellant Berna C. Prince (Prince) appeals the district court's judgment affirming the denial of her claim for Social Security disability insurance benefits by defendant-appellant Commissioner of Social Security (Commissioner).

**Facts and Proceedings Below**

Prince was thirty-seven years old at the time of the

---

[*]

Pursuant to Local Rule 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

administrative law judge's (ALJ's) decision denying disability benefits to her.  She has a high school education and has worked as a cashier and head bank teller.  Prince injured her back while working in April 1988, and she was assessed as having a fifteen percent permanent partial impairment for Worker's Compensation purposes.  After her injury and shortly before she alleges that she became completely disabled, Prince worked two jobs for a total of seventy to eighty hours a week.  In March 1992, Prince quit one of her jobs because of the mental stress, following the advice of a physician.  Her back was treated conservatively with bracewear, medications, and activity restrictions, and she declined the surgery offered by her physician.  She went on temporary leave of absence from her job as head teller on June 15, 1992; the leave became permanent thirty days later.  She has not been gainfully employed since that time.

Prince filed her application for disability benefits in June 1992.  She was represented by counsel at a hearing before an ALJ on January 6, 1994.  The ALJ denied her claim for benefits in a decision dated February 18, 1994.  The ALJ concluded that, although Prince no longer could perform her previous jobs as a cashier or head bank teller, she had the residual functional capacity to perform sedentary work.  The ALJ relied heavily on a letter dated July 28, 1993, from Prince's treating physician, Dr. Cameron.  The letter stated, *inter alia*, that Prince (1) had a herniated disc; (2) could perform the activities of daily living without severe pain, though she had to quit her job because of the pain associated

2

with work activities; (3) had not demonstrated any neurological deficit; (4) was advised by him to remain as active as possible and continue working; (5) was a candidate for vocational rehabilitation; and (6) could perform a sedentary job.

Prince requested a review of the ALJ's denial of benefits by the Appeals Council, and she submitted additional evidence of her disability for its consideration. The additional evidence consisted of four items: (1) a letter dated March 15, 1994, from Dr. Cameron opining that Prince could not perform sedentary work; (2) a letter dated March 28, 1994, from Dr. Nicholson stating that Prince was currently under his care for treatment of hypertension and depression and had previously been treated for gastritis; (3) a letter dated March 22, 1994, from a teacher of Prince's daughter stating that Prince's house showed signs of neglect, that her daughter's hair was occasionally in French braids for two weeks at a time, and that Prince always was seated in a chair on her visits to the house; and (4) a letter dated March 23, 1994, from Prince's mother stating that she and the children had to help Prince with the household work, that she helped Prince with the children, and that Prince was often in great pain. The Appeals Council specifically declined to give weight to Dr. Cameron's new letter because he did not give any reason for his change of opinion from July 1993 to March 1994. Dr. Cameron did not indicate that he had performed any tests on Prince—or had even seen her (or any medical records pertaining to her not previously examined)—since his previous opinion. After considering the record as whole as it

existed at that time (including the new evidence), the Appeals Council refused to review the ALJ's denial of benefits on June 21, 1994. *See* 20 C.F.R. §§ 404.970 (1995). Consequently, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981 (1995).

Prince filed a complaint seeking judicial review of the denial of benefits on July 11, 1994, and she filed two motions for remand. She submitted another letter from Dr. Cameron, dated July 18, 1994, to the district court for its consideration on her appeal and motions for remand. She also submitted other new evidence to support her request for remand, including letters from two other doctors, medical reports of MRI scanning and epidural blocks that were completed in September 1994, and evidence that she had seen a vocational rehabilitation counselor in July 1994.

The magistrate judge to whom the case was assigned recommended upholding the decision of the Commissioner and denying remand. The district court adopted the report and recommendation of the magistrate judge in its entirety and affirmed the denial of benefits.

## Discussion

This Court reviews the Commissioner's decision "only to determine whether it is supported by substantial evidence on the record as a whole and whether the [Commissioner] applied the proper legal standard." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir.

4

1994), *cert. denied*, 115 S.Ct. 1984 (1995).[1]  We may not reweigh the evidence or substitute our judgment for that of the Commissioner.  *Id.*  Prince alleges that the Commissioner's decision was not supported by substantial evidence and that the Commissioner applied an improper legal standard.  Alternatively, she urges that the district court erred in failing to grant a remand based on the evidence not considered by the Appeals Council.

I.  Determination of Residual Functional Capacity

To qualify for disability benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment" that can be expected to last for at least one year.  42 U.S.C. § 423(d)(1)(A) (1995).  An individual is considered disabled only if her impairments are so severe that she is not only unable to do her previous work but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2)(A) (1995).  Once an individual proves that she can no longer perform her past relevant work, however, the burden shifts to the Commissioner to prove that there are other jobs existing in the national economy that she could perform.  *See Fields v. Bowen*, 805 F.2d 1168, 1170 (5th Cir. 1986).  If the Commissioner meets

---

[1] The Supreme Court has explained that "substantial evidence is more than a scintilla and less than a preponderance.  It is of such relevance that a reasonable mind would accept it as adequate to support a conclusion."  *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)(citing *Richardson v. Perales*, 91 S.Ct. 1420, 1427, 1428 (1971)).

this burden, then the claimant must show that she cannot perform the alternate work. *Id.*

The ALJ found that Prince was unable to perform her past relevant work as a cashier and head teller but that she retained the residual functional capacity to perform the full range of sedentary work. Prince argues that the ALJ's determination was "contrary to the overwhelming weight of the law and evidence and not supported by any law or evidence." She also argues that the ALJ made three more specific errors: failing to require testimony by a vocational expert, discounting her subjective complaints of pain, and declining to believe the opinion of her treating physician. This Court finds no reversible error.

A.  Credibility of Subjective Complaints of Pain

Pain, in and of itself, can be a disabling condition when it is "constant, unremitting, and wholly unresponsive to therapeutic treatment." *Harrell v. Bowen*, 862 F.2d 471, 480 (5th Cir. 1988) (citations omitted). Prince testified that she suffered pain so severe that she would be unable to stand more than two to three hours or sit more than one hour a day. She testified that four or five days a week the pain was so severe that she could not leave the house and needed aid to get out of bed. On the two or three "good days" a week, Prince testified that she dressed herself, took care of her children, performed light house cleaning, cooked breakfast and dinner, washed clothes, and walked about a mile.

The ALJ found that Prince's subjective complaints of pain were not credible. Prince argues that there was no substantial evidence

6

to support the ALJ's credibility determination.

"'[T]he evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an opportunity to observe whether the person seems to be disabled.'" *Harrell*, 862 F.2d at 480 (citations omitted). The ALJ discussed the reasons for finding her claims of severe pain incredible: (1)Although she had had lumbar symptoms since April 1988, claimant continued to work two jobs until March 1992; (2) her physicians reported the presence of pain in Prince, but they described it as tolerable; (3) the pain did not preclude the activities of daily living; (4) Prince's treatment had been conservative, without need of hospitalizations or frequent emergency visits; and (5) Prince took medications which relieved her symptoms without any recorded side effects. These, along with the ALJ's observation of Prince during the hearing, constitute substantial evidence to support the conclusion that her complaints of pain were exaggerated.[2]

B.   Vocational Expert

Prince next alleges that the ALJ erred by failing to require testimony by a vocational expert. The testimony of a vocational expert is required if a claimant has adverse conditions that are not taken into account in the medical-vocational guidelines (the

---

[2] Prince testified that she continues most of the activities of daily living only two to three days a week and that the medications only relieve "some" of the pain. However, the ALJ was not required to fully credit Prince's testimony, and the other factors set forth above also support the ALJ's decision. The fact that Prince's own treating physician considered her pain in his July 28, 1993, opinion that she could perform sedentary work is the strongest support for the ALJ's decision.

Guidelines) set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2. *Lawler v. Heckler*, 761 F.2d 195, 197-98 (5th Cir. 1985); *see also Fields*, 805 F.2d at 1170 (the Guidelines may not be applied to solely non-exertional impairment). If the claimant suffers solely from an exertional impairment or if her non-exertional impairment does not significantly affect her residual functional capacity, an ALJ may rely exclusively on the Guidelines to determine whether there is work in the national economy that the claimant can perform. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

In the instant case, the ALJ relied on the Guidelines, 20 C.F.R. §§ 404.1569 and 404 Subpart P, Appendix 2, to find that Prince was not disabled. Prince suggests that her severe pain constitutes a non-exertional limitation that was not considered in the Guidelines. Thus, she argues the ALJ erred by failing to require a vocational expert to testify regarding her combination of exertional and non-exertional limitations.

Although pain is a non-exertional impairment, the ALJ found that Prince's subjective claims of pain were credible only to the extent that they limited her to sedentary work. The ALJ specifically found that claimant's testimony regarding pain was not credible to the extent alleged and rejected her assertions that her pain was so frequent and intense as to prevent her from performing the full range of sedentary work. Because the ALJ found that Prince's pain did not affect her residual functional capacity to perform the full range of sedentary work, no non-exertional impairment existed that would require the testimony of a vocational

8

expert.  Reliance on the Guidelines was proper.[3]  *See Fraga*, 810

F.2d at 1304; *see also* 20 C.F.R. § 404.1569a(b) (1995).

C. Substantial Evidence and Weight Given to Treating
Physician's Opinion

After hearing testimony and reviewing the medical evidence,

the ALJ found that although Prince suffers from a severe medical

condition, she retains the residual functional capacity to perform

the full range of sedentary work.  The medical evidence reveals

that Prince developed back problems in 1988.  Dr. Cameron began

treating her in April 1991.  After an MRI performed at that time,

Dr. Cameron continued conservative treatment and recommended that

Prince remain active and continue working.  In November 1992, Dr.

Cameron reported that Prince was capable of clerical/administrative

activity.  In July 1993, Dr. Cameron opined that she would not

> "be able to perform any job which requires crawling,
> bending, squatting or climbing.  She should not lift more
> than 10 pounds occasionally or 5 pounds frequently.  She
> should be able to perform most of her job activities
> directly in front of her and should be able to sit
> periodically during a work day."

This assessment of her functional abilities limited her to

sedentary work under 20 C.F.R. §§ 404.1567(a).  Dr. Cameron also

reported that Prince was able to perform activities of daily living

without severe pain and that she could return to work if she found

"a more sedentary" job.  Dr. Cameron's opinion constitutes

---

3

In addition, Prince complains that she was forced to bear an
improper burden of proof.  An examination of the record does not
indicate that the ALJ erred in dividing the burdens of proof.  The
Commissioner met the burden of proving that Prince could perform
sedentary work by means of the Guidelines, and Prince failed to
rebut that proof.  *See Fields*, 805 F.2d at 1169-70.

substantial evidence that Prince could perform the full range of sedentary work.

Prince's Point of Error number three states "It was error for Defendant not to believe treating physician of Plaintiff." Although her argument under this point of error is vague, Prince's reply brief complains that Dr. Cameron's March 15, 1994, letter opinion that she could not perform sedentary work was disregarded by the Appeals Council. Under this theory, the July 28, 1993, opinion that Prince could perform sedentary work would presumably be invalidated by Dr. Cameron's March 15, 1994, opinion.

This Court has not considered whether new evidence presented to the Appeals Council but not presented to the ALJ can constitute grounds for reversing the ALJ's disability determination. The circuits are split on the issue. Five circuits have held that new evidence presented to the Appeals Council becomes part of the record for reviewing whether the ALJ's holding is supported by substantial evidence. *E.g.*, *O'Dell v. Shalala,* 44 F.3d 855, 859 (10th Cir. 1994); *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066-67 (11th Cir. 1994); *Ramirez v. Shalala*, 8 F.3d 1449, 1452 (9th Cir. 1993); *Browning v. Sullivan*, 958 F.2d 817, 822-23 (8th Cir. 1992); *Wilkins v. Secretary of Dep't of Health and Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991). Two circuits have held that appellate review for substantial evidence is restricted to the evidence before the ALJ, without regard to new evidence submitted to the Appeals Council. *E.g.*, *Cotton v. Sullivan*, 2 F.3d 692, 695-96 (6th Cir. 1993); *Eads v. Secretary of Dep't of Health*

10

*and Human Servs.*, 983 F.2d 815, 816-18 (7th Cir. 1993). We need not reach the issue in this case because the result is the same whether Dr. Cameron's March 15, 1994, letter is considered or not. If it is not considered, then the evidence provided by him is that Prince can perform sedentary work. If we do consider Dr. Cameron's March 15, 1994, letter, there is still substantial evidence on the record as a whole supporting the ALJ's determination.

Dr. Cameron's March 15, 1994, letter states that Prince "is unable to tolerate standing or sitting for periods long enough to allow even employment in a sedentary job. She would also have great difficulties getting to and from a work place due to increased pain with transportation activities." This later letter fails to explain—or even suggest—why Dr. Cameron's opinion changed since July 28, 1993. The March 1994 letter does not say that the July 1993 letter is wrong or was not intended to mean what it says. Dr. Cameron does not state in his March 1994 letter that he has performed tests on Prince since the previous opinion, nor does he indicate that he has examined her (or medical records pertaining to her not previously examined) since that date. Though the medical opinion of a claimant's treating physician is ordinarily given great weight, *Greenspan*, 38 F.3d at 237, a physician's unexplained and unsupported change of opinion need not be given controlling weight in the disability determination. *See Stanley v. Secretary of Dep't of Health and Human Servs.*, 39 F.3d 115, 118 (6th Cir. 1994). Consequently, the ALJ's determination is supported by substantial evidence when considering the record as a whole—even

11

if the March 15, 1994, letter is considered.

II.   Remand

This Court has held that a case may be remanded to the Commissioner for consideration of additional evidence if there is new, material evidence and the claimant can show good cause for the failure to incorporate such evidence into the record in a prior proceeding.   *Latham v. Shalala*, 36 F.3d 482, 483 (5th Cir. 1994)(quoting 42 U.S.C. § 405(g)).   "For new evidence to be material, there must exist the 'reasonable possibility that it would have changed the outcome of the [Commissioner's] determination.'" *Id.* (citation omitted).   The evidence must also relate to the time period for which benefits were denied, and not concern evidence of a later-acquired disability or of the subsequent deterioration of the previously non-disabling condition. *Johnson v. Heckler*, 767 F.2d 180, 183 (5th Cir. 1985); *see Latham*, 36 F.3d at 483 & n. 2.

Prince contends that the district court should have remanded her case for reconsideration by the Commissioner based on information obtained after the Appeals Council denied her appeal. Prince bases her contention on still another letter from Dr. Cameron dated July 18, 1994, a letter from Dr. Pearson dated October 17, 1994, hospital records regarding epidural blocks and an MRI performed on Prince in September 1994, evidence that she had attended vocational rehabilitation in July 1994, and a letter from Dr. Kelly dated October 24, 1994.   Prince's contention is unconvincing.   She fails to show that any of this evidence meets

the requirement that it be both material and that there was good cause for the failure to incorporate such evidence into the record in the prior proceeding. *See Latham*, 36 F.3d at 483.

Dr. Cameron's July 18, 1994, letter states that Prince was unable to return to work because of the severity of her symptoms, and he opined that Prince was totally disabled "from a standpoint of return to employment." Dr. Cameron wrote a similar letter, dated March 15, 1994, which the Appeals Council considered in making its decision to affirm the denial of benefits. The July letter does not indicate that Dr. Cameron had observed or treated Prince (or examined previously unexamined records pertaining to her) after his March letter (or at any time after his contradictory July 28, 1993 letter), and it provides no new medical evidence, and does not explain the change in opinion from the July 1993 letter. Therefore, it cannot meet the requirement that it provide a reasonable possibility that it change the outcome.

The letters from Dr. Pearson and Dr. Kelly do not indicate that either physician treated Prince during the relevant time period or that her reported disability was likely to have existed during the relevant time period. Dr. Pearson's letter, dated October 17, 1994, states that he had treated Prince "for the last few months" for the pain caused by the herniated disc in her lumbar spine. He opined that Prince's pain and low back injury would interfere with her functioning in a job requiring lifting or prolonged sitting. He did not indicate that he treated Prince—or that she was disabled—prior to either the ALJ hearing or the Appeals Council decision. Dr. Pearson's letter fails to provide

13

a reasonable possibility for changing the outcome of the disability determination. *See Leggett v. Chater*, 67 F.3d 558, 567 (5th Cir. 1995) (examination after the relevant time period not basis for remand when claimant fails to prove that disability was not the result of the deterioration of a condition that was previously not disabling).

Similarly, Dr. Kelly's letter, dated October 24, 1994, states that Prince suffered chronic back pain, insomnia, hypertension, and significant depression, and she opines that Prince "is a very credible candidate for disability benefits." The letter does not indicate that Prince was disabled during the relevant time frame. If Dr. Kelly was treating Prince for significant depression during the relevant time frame, Prince fails to show good cause for the failure to put this in the record before the ALJ or the Appeals Council. If Dr. Kelly was not treating Prince during the relevant time frame, then her letter has no reasonable possibility of changing the outcome on remand.[4]

Finally, neither the records of the epidural block and the MRI performed on Prince in September 1994, nor the evidence that she had seen a vocational rehabilitation counselor in July 1994, provide a reasonable possibility for a change in outcome. None of

---

[4] The Appeals Council considered a letter from Dr. Nicholson, dated March 28, 1994, indicating that he was treating Prince for depression and hypertension. Dr. Nicholson had prescribed the Xanax that she was taking on an "as needed" basis at the time of the hearing before the ALJ. As it appears that Dr. Nicholson was treating Prince during the relevant time period and that Prince had her depression under control at the time of the ALJ hearing, it is unlikely that a nontreating physician's letter has a reasonable possibility of changing the outcome.

this evidence shows that Prince is disabled.  Presumably, the reports are evidence that she was in severe enough pain to seek to have the pain blocked by this means.  Although the ALJ relied in part on Prince's failure to seek emergency care for pain and her reliance on conservative methods of treatment, this July and September 1994 evidence is not material because it occurred outside of the relevant time frame.  *See Johnson*, 767 F.2d at 183.  The fact that Prince sought vocational rehabilitation in July 1994 also fails to provide a reasonable possibility that the result of her disability determination would be different on remand.

## Conclusion

For the foregoing reasons the district court's judgment in favor of the Commissioner is

AFFIRMED.